UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

*In re StockX Customer Data Security Breach Litigation*

Case No. 19-12441

Honorable Victoria A. Roberts

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION [ECF No. 30]

**I.    INTRODUCTION**

Eight individuals bring this putative class action against StockX seeking to represent a nationwide class and several subclasses of individuals who allegedly have been harmed by StockX's failure to protect their confidential and personal information from a data breach.

StockX moves the Court to dismiss the complaint for improper venue and to compel arbitration under the Federal Arbitration Act, 9 U.S.C. § 1, et seq.  Alternatively, it says the Court should dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), because the named Plaintiffs lack standing, or  for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6)

For the reasons below, the Court **GRANTS** StockX's motion to dismiss and compel arbitration.  [ECF No. 30].

## II. BACKGROUND

StockX is an e-commerce platform where users can purchase and sell luxury goods, fashion clothing, rare sneakers, and accessories.

The eight named Plaintiffs are registered users of StockX: (1) Kansas resident I.C. – a minor by and through his natural parent, Nasim Chaudhri; (2) New Jersey resident M.S. – a minor by and through his natural parent, Shuli Shakarchi; (3) Kansas resident Adam Foote; (4) New York resident Anthony Giampetro; (5) Georgia resident Kwadwo Kissi; (6) New York resident Richard Harrington; (7) Florida resident Johnny Sacasas; and (8) California resident Chad Bolling ("Plaintiffs").

### A.   Creating a StockX Account and StockX's Terms of Service

To create a StockX account, each Plaintiff had to complete the registration process, which involved manually and affirmatively checking a box indicating that he agreed to the then-current version of the Terms of Service ("Terms") and Privacy Policy. When registering for a StockX account through a web browser or StockX's mobile app, Plaintiffs were first shown a "Sign Up" screen containing an unchecked, clickable box next to a message that states to the new user: "By signing up, you agree to the Terms of Service and Privacy Policy":



The phrase "Terms of Service" is an active hyperlink and appears in blue or green – different colors from the other text in that sentence, clearly indicating that they are active hyperlinks that can be clicked on. By clicking on the "Terms of Service" hyperlink, another window immediately opens within the web browser containing the text of the then-current Terms.

No Plaintiff could have advanced to the next step to complete his StockX account registration unless and until he affirmatively clicked on the box next to the message that expressly states: "By signing up, you agree to the Terms of Service and Privacy Policy." As such, all Plaintiffs

encountered the Terms when they signed up to create their StockX account, and each Plaintiff had the opportunity to review the Terms prior to clicking on the box and consenting to the Terms. Considering each Plaintiff is a registered StockX user, each Plaintiff manually clicked on – or "checked" – the box and affirmatively agreed to the Terms to sign up for and create his StockX user account.

Furthermore, each time Plaintiffs logged in and continued to use their StockX account, they would have been shown a screen informing them that "[b]y logging in, you agree to the Terms of Service and Privacy Policy." To log in to their StockX accounts, each Plaintiff was then required to affirmatively click the button in the screenshot labeled "Log In" and again consent to the then-current Terms. Like the Sign Up screen, the words "Terms of Service" are in green – a different color from the other text in that sentence, clearly indicating that it is an active hyperlink that can be clicked on. When a consumer clicked on the "Terms of Service" hyperlink, another window would open within the web browser containing the entire text of StockX's then-current Terms. Thus, whenever Plaintiffs logged into their StockX account, they agreed to StockX's then-current version of the Terms.

All Plaintiffs created their StockX account in 2016 or later. Since November 10, 2015, StockX has revised its Terms twice – on October 17,

4

2017 and October 9, 2018. The October 9, 2018 Terms are StockX's current terms.

Four Plaintiffs created their StockX account after October 9, 2018; thus, by creating their account, those Plaintiffs agreed to the October 9, 2018 version of the Terms ("Current Terms"). While the other four Plaintiffs created their StockX account before StockX implemented the Current Terms, StockX establishes by an uncontested affidavit that each of those Plaintiffs agreed to the Current Terms; specifically, it establishes that each of those Plaintiffs logged into and used their StockX account after October 9, 2018 – when the Current Terms went into effect. Thus, by logging into and using their StockX account after October 9, 2018, those Plaintiffs also agreed to the Current Terms. *See supra*; *see also* Section 1 of StockX's November 2015 Terms, October 2017 Terms and Current Terms (allowing StockX to change the Terms and stating that continued use of their StockX account after the Terms change constitutes acceptance of the new Terms).

Because all eight Plaintiffs agreed to the Current Terms, they are the relevant version of the Terms governing this dispute.

StockX's Current Terms – like earlier versions of its Terms – contain a mandatory arbitration provision which provides that any and all disputes or claims that arise between StockX users and StockX must be resolved

5

exclusively through final and binding arbitration. Unlike earlier versions of StockX's Terms, the Current Terms also contain a delegation provision that delegates the issue of arbitrability to the arbitrator:

> Other than issues related to the CLASS ACTION WAIVER, the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate, any part of it, or of the Terms including, but not limited to, any claim that all or any part of this Agreement to Arbitrate or the Terms is void or voidable.
>
> The arbitration will be conducted by the American Arbitration Association ("AAA") under its rules and procedures . . . .

[ECF No. 30-8, PageID.1294].

## B. This Action

This action arises from a data breach to StockX's system which occurred sometime in May 2019.

Plaintiffs filed this and three other similar actions in 2019 and early 2020. In March 2020, the Court entered a stipulated order consolidating the cases. Plaintiffs filed a consolidated class action complaint in May 2020.

Plaintiffs say StockX sent an email to its users on August 1, 2019 requiring a password reset because it had completed "system updates." Plaintiff allege that in reality, StockX suffered a data breach with more than 6.8 million user accounts stolen by a cyber thief, who listed the data for sale on the "Dark Web," where the data was then sold multiple times and

later re-listed on other underground hacker forums. Plaintiffs claim that after StockX's deception was reported by technology media outlets, StockX sent a follow-up email to its users, acknowledging that its system had been breached and that an unknown criminal had stolen confidential customer data such as names, email addresses, shipping addresses, usernames, passwords, and purchase history. They allege that some Plaintiffs began to suffer identity theft and other fraudulent activities shortly after the breach.

Plaintiffs bring their claims on behalf of a nationwide class and several subclasses of individuals who allegedly have been harmed by StockX's failure to protect their confidential and personal information and by StockX's deceptive statements relating to the data breach.

StockX moves to compel arbitration and dismiss the complaint. StockX's motion is fully briefed.

### III.  ANALYSIS

Because the Court grants StockX's motion to compel arbitration, it is unnecessary to discuss StockX's other grounds for dismissal. The Court deems those arguments MOOT.

####   A.   The Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, provides that a written agreement to arbitrate disputes arising out of a transaction in

interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). "To enforce this dictate, the [FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3 and 4).

Section 4 of the FAA provides the procedure the Court follows when presented with a petition to compel arbitration:

> A party aggrieved by the . . . refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order [compelling arbitration]. . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall . . . order . . . the parties to proceed to arbitration in accordance with the terms of the agreement. . . If the making of the arbitration agreement [is] in issue, the court shall proceed [to trial].

9 U.S.C. § 4. While the FAA expresses a "liberal federal policy favoring arbitration," the Court must find that the parties agreed to arbitrate the

8

dispute at issue before compelling arbitration. *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 887, 889 (6th Cir. 2002).

"Generally, whether the parties are bound by a given arbitration clause raises a question of arbitrability for a court to decide." *In re: Auto. Parts Antitrust Litig.*, 951 F.3d 377, 381 (6th Cir. 2020) (citation and internal quotation marks omitted). However, the parties may instead "agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Id.* at 381-82 (quoting *Henry Schein, Inc. v. Archer & White Sales, Inc.*, — U.S. —, 139 S. Ct. 524, 529 (2019)).

Such an agreement – referred to as a "delegation provision" – "is simply an additional, antecedent agreement" which "the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 382 (quoting *Rent-A-Ctr.*, 561 U.S. at 70). For a delegation provision to be valid, there must be "clear and unmistakable" evidence that the parties agreed to have an arbitrator decide gateway questions of arbitrability. *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020).

As the Sixth Circuit recently explained, "courts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (*absent a valid provision specifically committing such disputes to an arbitrator*) its enforceability or applicability to the dispute is in issue." *In re: Auto. Parts Antitrust Litig.*, 951 F.3d at 382–83 (citation omitted; emphasis added). "In other words, whether an arbitration agreement was *formed* is always a question to be resolved by the court, and whether the arbitration agreement is *enforceable* or covers a particular claim is also typically a question for the court *unless* it has been effectively delegated to the arbitrator." *Ingram v. Neutron Holdings, Inc.*, 467 F. Supp. 3d 575, 581 (M.D. Tenn. 2020).

Finally, the Court applies the summary judgment standard under Fed. R. Civ. P. 56 when ruling on a motion to compel arbitration. *See Simons*, 288 F.3d at 889 (to withstand a motion to compel arbitration, "the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate . . . [a] showing [which] mirrors that required to withstand summary judgment"); *Weddle Enterprises, Inc. v. Treviicos-Soletanche, J.V.*, No. 14-00061, 2014 WL 5242904, at *2 (W.D. Ky. Oct. 15, 2014) ("A motion to dismiss based on the existence of a valid arbitration agreement is not evaluated under the usual Fed. R. Civ. P.

10

12(b)(6) standard. Instead, courts apply the standard applicable to motions for summary judgment." (internal citation omitted)).

### B. StockX's Arbitration Agreement

#### i. Plaintiffs' Arguments Regarding the Arbitration Agreement as a Whole

Plaintiffs say the Court should deny StockX's motion to compel arbitration, arguing that: (1) no valid arbitration agreement exists with respect to the two minor Plaintiffs under the infancy doctrine (which allows a minor to disaffirm a contract); and (2) the arbitration agreement is invalid because it is unconscionable.

StockX correctly points out that Plaintiffs do not contest the formation or existence of the arbitration agreement. StockX says that because Plaintiffs' arguments go solely to whether the arbitration agreement is enforceable, they are subject to arbitration because the delegation clause provides the arbitrator exclusive authority to resolve arguments related to the enforceability of the agreement. *See supra* Section II.A. ("the arbitrator . . . shall have exclusive authority to resolve any dispute . . . relating to the . . . enforceability . . . of this Agreement to Arbitrate . . . or of the Terms including . . . any claim that . . . this Agreement to Arbitrate or the Terms is void or voidable").

11

Plaintiffs argue that "the Court must analyze the threshold issue of whether the arbitration agreement itself is unenforceable before reaching the issue of the delegation clause. And since here the arbitration agreement is unenforceable, the Court need not reach the issue of the delegation clause." The Court disagrees.

In contending that despite the delegation clause, the Court – and not the arbitrator – must decide their arguments that the arbitration agreement is unenforceable, Plaintiffs rely on *Taylor v. Pilot Corp.*, 955 F.3d 572 (6th Cir. 2020), where – in *dicta* – the court noted that "[Sixth Circuit] case law strongly suggests that the district court has the authority to determine whether the signature on an arbitration agreement is valid in advance of compelling arbitration in accordance with that agreement" – even when the alleged agreement contained a delegation clause. *Id.* at 577. *Taylor* is distinguishable.

The dispute in *Taylor* concerned the *formation* – as opposed to the validity – of the arbitration agreement, with a "number of Plaintiffs claim[ing] that they were not employees of Pilot on the dates indicated on those alleged agreements and thus no binding arbitration agreement was formed." 955 F.3d at 576. The Sixth Circuit explained that "[t]he FAA's demand for consent-based arbitration agreements would be severely

12

undermined if the law operated otherwise . . . 'Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature.'" *Id.* at 577 (citation omitted).

Unlike in *Taylor* – where the plaintiffs claimed that they never even formed an arbitration agreement to which they could be bound – Plaintiffs do not challenge the *formation* of the arbitration agreement. They – like the plaintiffs in *Rent-A-Center* – challenge the validity of the arbitration agreement.

As the Supreme Court explained in *Rent-A-Center*, when being asked to enforce a delegation provision giving exclusive authority to the arbitrator to resolve disputes relating to the enforceability of an arbitration agreement – like StockX requests – the Court may only consider arguments that challenge the delegation provision specifically, not those that challenge the validity of the agreement as a whole or that would render the entire agreement invalid. *See Rent-A-Ctr.*, 561 U.S. at 72-74 (disregarding unconscionability arguments that challenged the validity of the agreement as a whole instead of the validity of the delegation provision specifically).

Plaintiffs' unconscionability and infancy doctrine arguments do not challenge the validity "of the precise agreement to arbitrate at issue" – i.e., the delegation clause. *See id.* at 72. Indeed, like the unconscionability

13

arguments raised in *Rent-A-Center*, Plaintiffs' unconscionability arguments relate to the validity of the arbitration agreement as a whole – they are not specific to the delegation provision. Thus, the Court may not consider them in deciding whether to enforce the delegation clause. *See id.* ("unless [plaintiff] challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator"). The same is true for the minor-Plaintiffs' infancy doctrine argument: it challenges the enforceability of the agreement as a whole and must be left for the arbitrator to decide. *See id.*

### ii. **Plaintiffs' Arguments Regarding the Delegation of Arbitrability Clause**

Plaintiffs use the majority of their space to argue that the Court need not consider the delegation clause because the arbitration agreement as a whole is unenforceable. However, in the final few paragraphs of their opposition to StockX's motion to compel arbitration, Plaintiffs say the delegation clause is invalid because: (1) StockX has not met its burden of showing that all Plaintiffs agreed to the delegation clause; and (2) the delegation clause is unenforceable with respect to the two minor Plaintiffs.

14

With respect to the first argument, StockX must prove that the parties "clearly and unmistakably" agreed to arbitrate "'gateway' questions of 'arbitrability.'" *Rent-A-Ctr.*, 561 U.S. at 68-70 n.1.

Plaintiffs say StockX fails to meet this burden. They say StockX unilaterally modified its Terms on October 9, 2018 to include the delegation clause, and that earlier versions of the Terms delegated questions of arbitrability to the Court. Thus, Plaintiffs say StockX fails to show that the four Plaintiffs who created their StockX account before October 9, 2018 – Kissi, Bolling, Giampetro, and M.S. – agreed to arbitrate arbitrability. The Court disagrees.

Although those four Plaintiffs created their StockX account before October 9, 2018, StockX establishes that each of them continued to log into and use their StockX account after October 9, 2018. By logging into and using their StockX account after that date, they agreed to StockX's October 9, 2018 version of the Terms. *See supra* Section II.A. Plaintiffs say they do not accept this and that there is a question of fact regarding whether they accepted the Current Terms. However, Plaintiffs' statement is conclusory and insufficient to show that a genuine issue of material fact exists. Plaintiffs accepted the Current Terms – including the delegation of arbitrability provision.

15

Additionally, like the agreement in *Blanton*, StockX's Terms expressly incorporate the AAA Rules into the agreement and helpfully include a link to the AAA's website –which the Sixth Circuit found to be "pretty compelling evidence that [plaintiff] agreed to arbitrate 'arbitrability.'" *Blanton*, 962 F.3d at 845-46 ("[D]istrict courts in our circuit have long found that the incorporation of the AAA Rules provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" (citations omitted)).

Plaintiffs' first argument fails. There is "clear and unmistakable" evidence that the parties agreed to arbitrate arbitrability.

Their second argument also fails. Plaintiffs say that the infancy doctrine renders the delegation clause invalid and unenforceable for the same reasons that it invalidates the arbitration agreement. They also say that "an agreement to arbitrate arbitrability is . . . more difficult for minors to understand" than an agreement to arbitrate a dispute, and that "forcing arbitration . . . would gut the infancy doctrine and fail to protect minors from contractual obligations they did not have the capacity to make or understand." However, Plaintiffs cite no case law for either contention.

Plaintiffs' infancy defense is no different from their argument that the entire arbitration agreement is unenforceable. Moreover, contrary to Plaintiffs' argument, minors are capable of contracting; "their contracts [are]

16

valid until disaffirmed." *Semmens v. Floyd Rice Ford, Inc.*, 1 Mich. App. 395, 400 (1965). Therefore, the relevant question is whether the delegation clause in StockX's Terms extends to the issue of whether a minor effectively disaffirmed the arbitration agreement; that is, whether pursuant the delegation clause the arbitrator has exclusive authority to determine if the minor Plaintiffs disaffirmed the agreement. Because the issue relates to the enforceability of the arbitration agreement, the Court finds that it does. A court in this Circuit recently concluded the same when faced with a similar delegation clause and similar infancy defense:

> even if the court believes that the defendant's assertion that the plaintiffs' claims in this lawsuit are subject to arbitration is utterly without merit, or 'wholly groundless,' *Henry Schein* prohibits denial of the Motion to Compel on that basis, because the fact remains that the enforceability of the contract, based on the validity of [plaintiff]'s infancy defense as a basis for rescinding the contract, is a question of arbitrability that has been delegated to the arbitrator.

*Ingram v. Neutron Holdings, Inc.*, 467 F. Supp. 3d 575, 585 (M.D. Tenn. 2020). For the same reasons as *Ingram*, the Court finds that Plaintiffs' infancy defense is a question of arbitrability reserved for the arbitrator.

StockX demonstrates that this matter should be referred to arbitration, and Plaintiffs fail to show that StockX's motion to compel arbitration should not be granted.

## IV. CONCLUSION

StockX's motion to dismiss is **GRANTED IN PART** and **MOOT IN PART**.

The Court **GRANTS** StockX's motion to compel arbitration; its other arguments for dismissal are **MOOT**.

Plaintiffs' complaint is **DISMISSED**.

**IT IS ORDERED**.

                                                    s/ Victoria A. Roberts
                                                    Victoria A. Roberts
                                                    United States District Judge

Dated: December 23, 2020