# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Deborah S. Hunt
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: December 02, 2021

Ms. Sharon Sue Almonrode
Mr. William Kalas
Mr. E. Powell Miller
Miller Law Firm
950 W. University Drive, Suite 300
Rochester, MI 48307

Mr. Daniel Jay Buller
Foulston Siefkin
9225 Indian Creek Parkway, Suite 600
Overland Park, KS 66210

Mr. Jamisen A. Etzel
Lynch Carpenter
1133 Penn Avenue, Fifth Floor
Pittsburgh, PA 15222

Mr. Todd Lundell
Sheppard, Mullin, Richter & Hampton
650 Town Center Drive, Tenth Floor
Costa Mesa, CA 92626-1993

Mr. David Mitchell Poell
Sheppard Mullin Richter & Hampton
70 W. Madison Street, Suite 4800
Chicago, IL 60602

Ms. Kari M. Rollins
Sheppard Mullin Richter & Hampton
30 Rockefeller Plaza
New York, NY 10112

Re: Case No. 21-1089, *I.C., a Minor through parent, et al v. StockX, LLC, et al*
Originating Case No. : 2:19-cv-12441

Dear Counsel,

    The court today announced its decision in the above-styled case.

    Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                        Yours very truly,

                                        Deborah S. Hunt, Clerk


                                        Cathryn Lovely
                                        Deputy Clerk

cc:  Ms. Kinikia D. Essix

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0276p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

IN RE: STOCKX CUSTOMER DATA SECURITY BREACH LITIGATION.

───────────────

I. C., a minor by and through his natural parent, Nasim Chaudhri, M. S., a minor by and through his natural parent, Shuli Shakarchi, ADAM FOOTE, ANTHONY GIAMPETRO, KWADWO KISSI, RICHARD HARRINGTON, JOHNNY SACASAS, and CHAD BOLLING, individually and on behalf of a Class of similarly situated persons,

*Plaintiffs-Appellants*,

*v.*

STOCKX, LLC; STOCKX, INC.,

*Defendants-Appellees*.

No. 21-1089

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:19-cv-12441—Victoria A. Roberts, District Judge.

Decided and Filed:  December 2, 2021

Before:  GUY, MOORE, and GIBBONS, Circuit Judges.

───────────────

### COUNSEL

**ON BRIEF:**  E. Powell Miller, Sharon S. Almonrode, William Kalas, THE MILLER LAW FIRM, P.C., Rochester, Michigan, Daniel J. Buller, FOULSTON SIEFKIN LLP, Overland Park, Kansas, for Appellants.  Kari M. Rollins, SHEPPARD MULLIN RICHTER & HAMPTON LLP, New York, New York, David M. Poell, SHEPPARD MULLIN RICHTER & HAMPTON LLP, Chicago, Illinois, Todd E. Lundell, SHEPPARD MULLIN RICHTER & HAMPTON LLP, Costa Mesa, California, for Appellees.

GUY, J., delivered the opinion of the court in which GIBBONS, J., joined.  MOORE, J. (pp. 17–22), delivered a separate dissenting opinion.

No. 21-1089          *In re StockX Customer Data Security Breach Litig.*          Page 2

————————————

### OPINION

————————————

RALPH B. GUY, JR., Circuit Judge.  Eight named plaintiffs, among them two minors, brought this nationwide putative class action against e-commerce provider StockX for allegedly failing to protect millions of StockX user's personal account information obtained through a cyber-attack in May 2019.  The district court granted StockX's motion to dismiss the action and compel arbitration.  Plaintiffs have appealed, arguing that there is an issue of fact as to whether four of the plaintiffs agreed to the current terms of service and that the defenses of infancy and unconscionability render the terms of service and the arbitration agreement (including the delegation provision) invalid and unenforceable.  Because we conclude that a contract exists and that the delegation provision itself is valid, the arbitrator must decide in the first instance whether the defenses of infancy and unconscionability allow plaintiffs to avoid arbitrating the merits of their claims.  Accordingly, we AFFIRM.

### I.

### A.

StockX is an e-commerce website.  Users can buy and sell a variety of luxury merchandise, but StockX's emphasis is rare sneakers.  Although any person can browse merchandise on StockX, only users with an account can bid on or sell an item.  To create a StockX account, a user must agree to StockX's terms of service by affirmatively checking the box next to the message that states: "By signing up, you agree to the Terms of Service and Privacy Policy."  The words "Terms of Service" and "Privacy Policy" are blue or green, indicating embedded hyperlinks, and the other words in the sentence are black.  By clicking on "Terms of Service," a user can view the full text of the terms.  Each time a user logs in with their StockX account information, the user must click the "Log In" button.  Below that button, it states: "By logging in, you agree to the Terms of Service and Privacy Policy."  Again, a user can click on the colored, hyperlinked words "Terms of Service" to view the current terms.

Since 2015, StockX's terms of service always included an arbitration agreement, a delegation provision, a class action waiver, and instructions for how to opt out of the arbitration agreement.  But the terms have changed over time.  In relevant part, the terms of service StockX issued in 2015 provided that a court shall decide "issues relating to arbitrability" and "the scope or enforceability of [the] Agreement to Arbitrate."  (R. 30-6, PageID 1268).  But the next sentence seemingly conflicted, stating that "[t]he arbitrator, and not any . . . court or agency, shall have exclusive authority to resolve any dispute . . . relating to the interpretation, applicability, enforceability or formation of . . . all or any part of this Agreement to Arbitrate or the User Agreement[.]"  *Id.*

StockX later changed its terms of service on two occasions.  First, on October 17, 2017, StockX added the following provision:

> StockX may in [its] discretion change these Terms . . . without notice to you. Changes take effect when we post them on our sites.  YOUR CONTINUED USE OF THE SITE AFTER WE CHANGE THESE TERMS CONSTITUTES YOUR ACCEPTANCE OF THE CHANGES.  IF YOU DO NOT AGREE TO ANY CHANGES, YOU MUST CANCEL YOUR ACCOUNT.

(R. 30-7, PageID 1273).

Second, StockX again changed its terms of service on October 9, 2018.  Under the section titled "Arbitration Procedures," StockX revised its delegation provision by removing any indication that a court could decide issues of arbitrability.  The delegation provision states in unambiguous terms that:

> Other than issues related to the CLASS ACTION WAIVER, the arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement to Arbitrate, any part of it, or of the Terms including, but not limited to, any claim that all or any part of this Agreement to Arbitrate or the Terms is void or voidable.

(R. 30-8, PageID 1293-94).  The agreement also provides that the "arbitration will be conducted by the American Arbitration Association ("AAA") under its rules and procedures, . . . as modified by [the] Agreement to Arbitrate."  (*Id.*, PageID 1294).  Similar to the 2017 Terms, StockX's October 2018 Terms state that "**[i]f you do not agree to these Terms, do not use any**

**portion of the Services**"; "YOUR CONTINUED USE OF THE SITE AND/OR SERVICES AFTER WE CHANGE THESE TERMS CONSTITUTES YOUR ACCEPTANCE OF THE CHANGES"; and "IF YOU DO NOT AGREE TO ANY OF THE CHANGES, YOU MUST CANCEL YOUR ACCOUNT AND NOT USE ANY PORTION OF THE SERVICES." (*Id.*, PageID 1289 (emphasis in original)).

There are eight named plaintiffs in this putative class action.[1]  Four of the plaintiffs—M. S., Giampetro, Kissi, and Bolling—created their StockX accounts between June 2016 and February 2018, before StockX issued its October 2018 Terms containing the revised delegation provision.  The other four plaintiffs—I. C., Foote, Harrington, and Sacasas—created their StockX accounts *after* StockX issued its October 2018 Terms.

Plaintiffs allege that in May 2019, a computer hacker breached StockX's system, stole personal information from 6.8 million StockX user accounts, and listed the data on the "dark web."

## B.

The eight named plaintiffs brought this nationwide putative class action against Defendants StockX, LLC, and StockX, Inc., (collectively "StockX"), asserting violations of federal and state consumer protection laws.  StockX filed a motion to dismiss and compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq*., or, in the alternative, to dismiss the action for lack of subject matter jurisdiction or failure to state a claim.  Plaintiffs opposed the motion.  In pertinent part, plaintiffs argued that: there is an issue of fact as to whether four of the plaintiffs accepted the October 2018 Terms; "no enforceable arbitration agreement exists" for the minor plaintiffs due to the state law infancy doctrine; the arbitration agreement is invalid as to all plaintiffs because it is unconscionable; and the delegation provision, specifically, is "invalid" and "unenforceable" as to the minor plaintiffs under the infancy doctrine.

---

[1]The following eight individuals are the named plaintiffs: (1) Kansas citizen I. C., a minor; (2) New Jersey citizen M. S., a minor; (3) Kansas citizen Adam Foote; (4) California citizen Chad Bolling; (5) Florida citizen Johnny Sacasas; (6) New York citizen Anthony Giampetro; (7) New York citizen Richard Harrington; and (8) Georgia citizen Kwadwo Kissi.

After rejecting plaintiffs' arguments, the district court granted StockX's motion to compel arbitration, concluded that StockX's other reasons for dismissal are moot, and dismissed the action.  In doing so, the district court reasoned that under the delegation provision in the October 2018 Terms, the infancy and unconscionability defenses plaintiffs had asserted must be decided by an arbitrator, not a court.  Plaintiffs appealed.

## II.

On appeal, plaintiffs assert the same principal arguments that they made before the district court.  We are not persuaded that the district court erred.

## A.

"[A]rbitration is a matter of contract," meaning "courts must 'rigorously enforce' arbitration agreements according to their terms."  *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted).  For instance, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (cleaned up) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)).  And as relevant here, the parties may also specify "the issues subject to arbitration." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1416 (2019); *accord Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010).  In this way, the "parties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence."  *Henry Schein*, 139 S. Ct. at 530 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  Such a choice is typically evidenced in a so-called "delegation" clause or provision.  *See Rent-A-Center*, 561 U.S. at 68-69; *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019).

There is a delegation provision in this case.  It states that "the arbitrator . . . shall have exclusive authority to resolve any dispute arising out of or relating to the interpretation, applicability, enforceability or formation of [the] Agreement to Arbitrate, any part of it, or of the Terms including, . . . any claim that all or any part of [the] Agreement to Arbitrate or the Terms

is void or voidable." (R. 30-8, PageID 1293-94). Such language alone is clear and unmistakable evidence requiring that an arbitrator shall decide the "applicability, enforceability," or validity of both the arbitration provision and the entire contract. *See Rent-A-Center*, 561 U.S. at 66, 72-73; *Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021).[2]

But even where an agreement contains a so-called delegation provision, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein*, 139 S. Ct. at 530 (citing 9 U.S.C. § 2). Indeed, the Supreme Court has instructed that "courts should order arbitration of a dispute only where the court is satisfied that neither the *formation* of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (first emphasis added). "The issue of the agreement's 'validity' is different from the issue whether any agreement between the parties 'was ever concluded[.]'" *See Rent-A-Center*, 561 U.S. at 88 n.2 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)); *see also Granite Rock*, 561 U.S. at 297 (articulating the issues a "court must resolve," which "always include whether the clause was agreed to, and may include when that agreement was formed").

Although the Supreme Court has not addressed the situation where, as in this case, a delegation provision purports to require arbitration of the formation or existence of the contract containing the provision, the above cases instruct that such issues are "always" for courts to decide at the outset. After all, "arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen*, 559 U.S. at 681 (citation omitted). In any event, this court has held that, even where a delegation provision purports to require arbitration of formation issues, the severability principle does not

---

[2] The October 2018 Terms also state that "arbitration will be conducted by the American Arbitration Association ("AAA") under its rules and procedures, including the AAA's Consumer Arbitration Rules," and the terms provide the AAA's website where the rules can be located. (R. 30-8, PageID 1294). Those rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim," and "shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part." AAA Consumer Arb. R. 14(a)-(b) (effective Sept. 1, 2014); *see also* AAA Comm'l Arb. R. 7(a)-(b) (effective Oct. 1, 2013). This court, and each of the ten other circuits to address the issue, has held that "the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 846 (6th Cir. 2020) (collecting cases).

apply and courts must decide challenges to the formation or "existence of an agreement in the first instance ('whether it was in fact agreed to' or 'was ever concluded')." *See VIP, Inc. v. KYB Corp.* (*In re Auto. Parts Antitrust Litig.*), 951 F.3d 377, 385 (6th Cir. 2020) (quoting *Rent-A-Center*, 561 U.S. at 69 n.1, 71 & n.2); *see also Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 843-44 (6th Cir. 2021) (involving whether an employee "assented" to an arbitration contract and concluding that the courts "must decide this formation question—regardless of what the (alleged) contract says").  We are not alone in this regard.[3]

If an agreement exists, then "as a matter of substantive federal arbitration law, an arbitration provision [and delegation provision] [are] severable from the remainder of the contract." *See Rent-A-Center*, 561 U.S. at 70-72 (quoting *Buckeye*, 546 U.S. at 445).  "[U]nder the severability principle, we treat a challenge to the validity of an arbitration agreement (or a delegation clause) separately from a challenge to the validity of the entire contract in which it appears." *New Prime*, 139 S. Ct. at 538.  Where, as in this case, a delegation provision calls for an arbitrator to decide the validity and enforceability of both the arbitration provision and the contract in which it appears, courts may only decide a challenge to "the delegation provision specifically," *Rent-A-Center*, 561 U.S. at 72, "or claims that the agreement to arbitrate was '[n]ever concluded,'" *see Granite Rock*, 561 U.S. at 301 (quoting *Buckeye*, 546 U.S. at 444 n.1)).  Thus, "if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator" and that delegation provision stands, "a court may not decide the arbitrability issue." *Henry Schein*, 139 S. Ct. at 530; *see Rent-A-Center*, 561 U.S. at 72-73.

Against this backdrop, our analysis proceeds in two steps.  *First*, we resolve any challenge that pertains to the *formation* or *existence* of the contract containing the delegation provision.  If a contract exists, we proceed to step two.  *Second*, we decide any remaining

---

[3]*See, e.g.*, *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 400-02 (3d Cir. 2020) (collecting cases and concluding, despite that "the delegation provision seems to be a valid agreement to arbitrate the existence" of the whole contract, "the degree of specificity required" under the "severability doctrine" does "not apply," and the court must decide challenges to the "formation or existence of the container contract"); *Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 725 (5th Cir. 2020) ("If the *existence* of an arbitration contract between parties is challenged, the challenge is always for the courts to decide."); *Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 990 (11th Cir. 2012) (explaining that "*Granite Rock*'s threshold inquiry of whether a contract was formed necessarily precedes" the "determination of whether any subsequent challenges are to the entire agreement, or to the arbitration clause specifically" under the severability principle).

*enforceability* or *validity* challenge only if it would "affect the [delegation provision] alone" or "the basis of [the] challenge [is] directed specifically to the [delegation provision]." *Rent-A-Center*, 561 U.S. at 71-72. "We review *de novo* a district court's decisions regarding both the existence of a valid arbitration agreement and the arbitrability of a particular dispute." *VIP*, 951 F.3d at 381 (quoting *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311 (6th Cir. 2000)).

## B.

The four plaintiffs who established their StockX account before October 2018 contend that the district court erred in concluding that they agreed to the October 2018 Terms that contain the revised delegation provision. We disagree.

Plaintiffs' "acceptance" argument is for a court to decide—irrespective of any delegation provision—because the argument goes to the formation or existence of the contract ("whether it was in fact agreed to" or "was ever concluded"). *VIP*, 951 F.3d at 385 (quoting *Rent-A-Center*, 561 U.S. at 69 n.1, 71 & n.2); *see Granite Rock*, 561 U.S. at 299, 301; *see supra*, Section II.A.

Section 4 of the FAA directs that if the "making of the agreement for arbitration . . . is not in issue," the court shall direct "the parties to proceed to arbitration," but "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. To determine whether the existence of an agreement is "in issue," this court applies the standard for summary judgment. *See, e.g.*, *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 565 F.3d 997, 1001 (6th Cir. 2009). StockX, as the movant asserting the existence of a contract, must initially carry its burden to produce evidence that would allow a reasonable jury to find that a contract exists. *See Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011); Fed. R. Civ. P. 56(a), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). We "apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944; *see Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009).

The parties agree Michigan law applies to plaintiffs' formation argument.[4]   Four plaintiffs—M. S., Giampetro, Kissi, and Bolling—argue that they created their StockX accounts before StockX changed its terms in October 2018 to include the revised delegation provision and that they did not assent to these changes.   Under Michigan law, "[a] valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation."   *AFT Mich. v. State*, 866 N.W.2d 782, 804 (Mich. 2015).   Plaintiffs' lack-of-assent argument pertains to the fourth element (mutuality of agreement), which requires "an offer and acceptance."   *See Bodnar v. St. John Providence, Inc.*, 933 N.W.2d 363, 369 (Mich. Ct. App. 2019); *Kloian v. Domino's Pizza, L.L.C.*, 733 N.W.2d 766, 770 (Mich. Ct. App. 2006).   That is, there must be "mutual assent"— i.e., a "'meeting of the minds' on all the essential elements of the agreement."   *Huntington Nat'l Bank v. Daniel J. Aronoff Living Trust*, 853 N.W.2d 481, 488 (Mich. Ct. App. 2014) (quoting *Goldman v. Century Ins. Co.*, 93 N.W.2d 240, 243 (Mich. 1958)).   Whether there was a "meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind."   *Kloian*, 733 N.W.2d at 771 (citation omitted).

StockX established mutuality of agreement.   StockX submitted an affidavit from its Vice President of Product Development, stating that when StockX revised its terms on October 9, 2018, StockX sent an email to "Plaintiffs M.S., Giampetro, Kissi, and Bolling (and all other StockX registered users)."   The email (attached to the affidavit) informed plaintiffs that the company had "updated [its] Terms of Service and Privacy Policy," and the email included hyperlinks for plaintiffs to click and "read the full Terms of Service and Privacy Policy."   It was plaintiffs' duty to "read" the contract and obtain an explanation if they did not understand it.

---

[4]A federal court sitting in diversity must apply the choice-of-law rules of the forum state.   *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).   Michigan applies the approach in §§ 187 and 188 of the Restatement (Second) of Conflict of Laws.   *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698, 703 (Mich. 1995); *see also Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008); *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 368 (6th Cir. 2008) (applying the "the law of the forum" as opposed to "the law chosen by the litigants" to determine whether there was a contract with a forum selection clause).   The district court did not conduct a choice-of-law analysis or cite the law of any state in deciding the formation issue.   On appeal, at least for this issue, StockX cites to Michigan law, and plaintiffs follow suit in their reply brief, without challenging the choice of law.   (Appellee Br. 23; Reply Br. 1-2).   Because the parties agree Michigan law applies, we apply Michigan contract law.   *See Baker Hughes Inc. v. S&S Chem., LLC*, 836 F.3d 554, 560 (6th Cir. 2016).

*See Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915, 920 (Mich. 1999) (citation omitted); *Scholz v. Montgomery Ward & Co.*, 468 N.W.2d 845, 848-49 (Mich. 1991). The October 2018 Terms state: "**[i]f you do not agree to these Terms, do not use any portion of the Services**"; "YOUR CONTINUED USE OF THE SITE AND/OR SERVICES AFTER WE CHANGE THESE TERMS CONSTITUTES YOUR ACCEPTANCE OF THE CHANGES"; and "IF YOU DO NOT AGREE TO ANY OF THE CHANGES, YOU MUST CANCEL YOUR ACCOUNT AND NOT USE ANY PORTION OF THE SERVICES." (R. 30-8, PageID 1289 (emphasis in original)). In Michigan, it is "hornbook law" that contracting parties "are at all times free to alter, amend, or modify their agreement. . . . [T]he parties may execute a substituted agreement which totally supersedes the terms of the original." *Archambo v. Lawyers Title Ins. Corp.*, 646 N.W.2d 170, 176 (Mich. 2002). Further, the affidavit StockX submitted states, "Plaintiffs M.S., Giampetro, Kissi, and Bolling have all continued to login to [*sic*] and use their StockX accounts and StockX's Services." By doing so, plaintiffs conduct "mirrors that called for in the offer, and 'the manifestation of mutual assent may be made wholly or partly by . . . acts or conduct.'" *Tillman v. Macy's, Inc.*, 735 F.3d 453, 460 (6th Cir. 2011) (brackets omitted) (quoting *Ludowici-Celadon Co. v. McKinley*, 11 N.W.2d 839, 840 (Mich. 1943)). StockX carried its burden.

It was then incumbent upon plaintiffs to "cit[e] to particular . . . materials in the record," *see* Fed. R. Civ. P. 56(c), to show that there is a genuine dispute of material fact that could "lead a rational trier of fact to find" that a contract does not exist. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). These four plaintiffs made no attempt to do so. They did not submit an affidavit declaring that either they did not receive the notification email or did not access their StockX accounts. Instead, in their *brief in opposition* to StockX's motion, plaintiffs offered the conclusory assertion that "there are questions of material fact as to whether [they] accepted the October 2018 Terms." That is not permissible *evidence* under Rule 56. *See Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009).

All told, plaintiffs M. S., Giampetro, Kissi, and Bolling failed to put "in issue" their consent to the October 2018 Terms that contain the revised delegation provision. 9 U.S.C. § 4.

## C.

The minor plaintiffs, M. S. and I. C., assert that the infancy doctrine "invalidates" the October 2018 Terms, rendering "the entire agreement unenforceable." (Appellant Br. 10, 14; Reply Br. 3). At the same time, however, plaintiffs argue that the district court should have decided their "infancy doctrine defense" because "it is an attack on the formation or existence of the contract" as a whole. (Appellant Br. 21-23; Reply Br. 3-10). We conclude otherwise, so the severability principle applies.

Consider a few examples where the severability principle was applied. In *Prima Paint*, the Supreme Court held that "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the 'making' of the agreement to arbitrate—the federal court may proceed to adjudicate it." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967). Otherwise, the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 404. Similarly, in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), a court did not have the authority to decide that a "usurious interest" rate provision in a loan agreement rendered the entire contract "illegal and void *ab initio*" because the arbitration provisions were "enforceable apart from the remainder of the contract" under the severability principle. *See* 546 U.S. at 443, 446-47.

Then, in *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010), an employment contract contained a delegation provision, like the one here, assigning to the arbitrator the "exclusive authority to resolve any dispute relating to the . . . enforceability . . . of [the] Agreement including, but not limited to any claim that all or any part of [the] Agreement is void or voidable." 561 U.S. at 68. The Court reasoned that an arbitrator must decide plaintiff's claim that the employment contract was "both procedurally and substantively unconscionable" because his challenges were not "specific to the delegation provision." *Id.* at 73. And where a *signatory opposed* arbitration by arguing that the non-signatory seeking to compel arbitration "lacked ability to invoke the arbitration agreement," this court held that the argument concerned an issue of "enforceability" under the delegation provision in the contract, and thus it was a "question of arbitrability that [the] arbitration agreement delegated to an arbitrator." *Swiger*, 989 F.3d at 506-07; *see also Blanton*, 962 F.3d at 849 (concluding that the question of whether a signatory

opposing arbitration with a non-signatory was an issue of enforceability, not a challenge to the "'existence' of the arbitration agreement").

Here, plaintiffs' infancy argument does not concern the formation or existence of a contract. It makes no difference whether infancy under state law renders a contract void or voidable. In answering whether the rule of severability applies, the Supreme Court was clear in *Buckeye* that it is irrelevant whether the challenge at issue "would render the contract void or voidable" under the relevant state's contract law. *Buckeye*, 546 U.S. at 446-47; *see Nitro-Lift Techs., L.L.C. v. Howard*, 568 U.S. 17, 20-21 (2012). Instead, the relevant inquiry is whether the minor plaintiffs' infancy defense amounts to an argument that the agreement "was [n]ever concluded." *Granite Rock*, 561 U.S. at 299, 301 (cleaned up); *see also Rent-A-Center*, 561 U.S. at 71 & n.2; *VIP*, 951 F.3d at 385. That is not the case here.

Under Michigan law,[5] a minor's contract is not synonymous with a nonexistent contract. "It is elementary that an infant's contract, with certain exceptions . . ., is voidable." *Payette v. Fleischman*, 45 N.W.2d 16, 17 (Mich. 1950); *see Semmens v. Floyd Rice Ford, Inc.*, 136 N.W.2d 704, 705-07 (Mich. Ct. App. 1965) (conducting an extensive survey of Michigan law and concluding that "[t]he principle of law enunciated that an executed voidable contract of an infant is valid until disaffirmed appears to be the law in Michigan"), *appeal denied*, 377 Mich. 695 (1966). Thus, plaintiffs' infancy defense is a matter of enforceability covered under the delegation provision.[6]

---

[5] Plaintiffs concede that "because there is no conflict between Michigan, Kansas, and New Jersey law on the infancy doctrine issues before the Court, no choice-of-law determination is necessary." (Reply Br. 13); *cf. Baker Hughes*, 836 F.3d at 560.

[6] Although plaintiffs cite to *Woodman v. Kera LLC*, 785 N.W.2d 1, 15 (Mich. 2010), where the court stated that "a minor lacks the capacity to contract," Michigan still treats the contract as if it exists. Moreover, plaintiffs overlook the accompanying footnote in *Woodman*, where the court cited several Michigan Supreme Court cases holding that a minor's contract is merely voidable, not void. *See id.* at 15 n.14 (citing *Holmes v. Rice*, 7 N.W. 772, 772 (Mich. 1881) ("The law in recognizing the incapacity of infants to enter into certain contracts and declaring such contracts voidable does so for the infant's protection. Their contracts are not void but voidable, and it is for the infant to avoid the contract or ratify it[.]"); *Minock v. Shortridge*, 21 Mich. 304, 315 (1870) ("The executory contract of an infant, such as a promissory note, is not void in the sense of being a nullity, because it may be confirmed, but it has no binding force until it is confirmed."); *Carrell v. Potter*, 23 Mich. 377, 378-79 (1871); *Dunton v. Brown*, 31 Mich. 182, 183 (1875) (concluding that minor's agreement was "at best only voidable" and it "was certainly not a nullity"); *Reynolds v. Garber-Buick Co.*, 149 N.W. 985, 987 (Mich. 1914) ("After reaching his majority one may disaffirm a contract made by him during infancy and recover what he paid or parted with pursuant to such contract,

Because the delegation provision requires the arbitrator to decide "any claim that all or any part of th[e] Agreement to Arbitrate or the Terms is void or voidable," plaintiffs must "specifically" attack the validity or enforceability of "the delegation provision" itself. *See Rent-A-Center*, 561 U.S. at 72; *cf. Granite Rock*, 561 U.S. at 299.

## D.

Having concluded that the severability principle applies, the minor plaintiffs nevertheless maintain that they have "specifically challenge[d] the delegation provision" because "the minors adequately plead" (or argue, rather) that "the infancy doctrine independently invalidates" the delegation provision. (Reply Br. 10, 13; Appellant Br. 32, 35). All of the plaintiffs also argue that the arbitration agreement (including the delegation provision) is unconscionable. Both arguments miss the mark. The district court was correct to leave these issues for the arbitrator.

The Supreme Court has said there are "two types of validity challenges." *Rent-A-Center*, 561 U.S. at 70. "'One type challenges specifically the validity of the agreement to arbitrate,' and 'the other challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the whole contract invalid.'" *Id.* (brackets omitted) (quoting *Buckeye*, 546 U.S. at 444). Courts may decide only the first type. *See id.* at 70-72.

### 1.

Plaintiffs' infancy defense falls in the second category because that defense directly affects the enforceability or validity of the entire agreement. Plaintiffs admit as much, arguing that "the infancy doctrine is applicable to the contract as a whole; but it is also applicable to each arbitration clause and delegation clause when viewed separately." (Appellant Br. 34 (emphasis omitted)). Thus, an arbitrator must adjudicate plaintiffs' infancy defense.

---

if he return what he received."); *Lawrence v. Baxter*, 267 N.W. 742, 743 (Mich. 1936) ("Authority need not be cited in support of the uniform holdings that a minor may rescind a contract of this character. The contract for the house and lot was not for a necessity."). *Woodman* did not purport to overrule these prior cases. Michigan has also declared by statute that some contracts *cannot* be disaffirmed by minors. *See* Mich. Comp. Laws § 600.1403. Thus, while a minor may *generally* disaffirm a contract under Michigan law, that contract is "certainly not a nullity." *Dunton*, 31 Mich. at 183.

This conclusion is underscored by *Rent-A-Center*, where the Court explained the difference between a challenge specifically to the arbitration or delegation provision and a challenge to the entire agreement:

> In some cases the claimed basis of invalidity for the contract as a whole will be much easier to establish than the same basis as applied only to the severable agreement to arbitrate. Thus, in an employment contract many elements of alleged unconscionability applicable to the entire contract (outrageously low wages, for example) would not *affect the agreement to arbitrate alone*. But even where that is not the case—as in *Prima Paint* itself, where the alleged fraud that induced the whole contract *equally induced the agreement to arbitrate* which was part of that contract—we nonetheless require *the basis of [the] challenge* to be directed specifically to the agreement to arbitrate before the court will intervene.

561 U.S. at 71 (emphasis added); *see also Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 628 (6th Cir. 2004) (explaining that "a general arbitration clause is enforceable even if it is contained in a contract that is generally asserted to be voidable, unless the basis for rescission applies specifically to the arbitration clause").

For example, in *Rent-A-Center*, the plaintiff (who was also the party opposing arbitration) did not specifically challenge the delegation provision and argued only that the "arbitration agreement as a whole" was unconscionable. 561 U.S. at 72-75 (emphasis omitted). In particular, the plaintiff argued that "the fee-splitting arrangement and the limitations on discovery—procedures that were to be used during arbitration under *both* the agreement to arbitrate employment-related disputes *and* the delegation provision"—were unconscionable. *Id.* at 74 (emphasis in original). The Court held that the argument was not a specific challenge to the delegation provision. As the Court explained, the plaintiff needed to challenge "the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable." *Id.* at 74 (emphasis in original). "To make such a claim based on the discovery procedures," the Court instructed that the "[plaintiff] would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the [Arbitration] Agreement is unenforceable to be unconscionable." *Id.* at 65, 74. The plaintiff could not simply argue "that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable." *Id.* at 74.

It follows therefore that, contrary to plaintiffs' view, the requirement that a litigant must "specifically" challenge the delegation provision is not a mere pleading requirement. While this court has said in dicta that "[a] party may attack a delegation clause using the same arguments it raises against the entire arbitration agreement," *Swiger*, 989 F.3d at 506, that statement—in keeping with what *Rent-A-Center* teaches—must be understood to mean that a party may challenge both the entire agreement and a delegation provision under the same *legal doctrine*. But a party's mere statement that it is challenging the delegation provision is not enough; courts must look to the substance of the challenge. Here, plaintiffs' infancy defense affects the validity or enforceability of "the whole contract," as well as the agreement to arbitrate and its delegation provision, which are "part of that contract." *See Rent-A-Center*, 561 U.S. at 71. As such, plaintiffs were required to show that "*the basis of [their] challenge* [is] directed specifically" to the "delegation provision." *Id.* at 71-72 (emphasis added). They have failed to do so as they have simply recycled the same arguments that pertain to the enforceability of the agreement as a whole. Therefore, plaintiffs' infancy defense is for an arbitrator to decide.[7]

## 2.

An arbitrator must also decide plaintiffs' argument that the arbitration agreement and delegation provision are procedurally and substantively unconscionable. In particular, plaintiffs argue the arbitration agreement is procedurally unconscionable because: the contract is a "contract of adhesion," "comprised of boilerplate language, drafted by StockX"; the arbitration opt-out provision contains an "exacting set of instructions" and is "illusory"; and the arbitration clause incorporates the AAA rules "as modified by [the] Agreement to Arbitrate." (Appellant Br. 44-45). But these arguments do not relate specifically to the delegation provision. As in

---

[7]It appears no other federal appellate court has addressed an infancy defense in the arbitration setting. Two of our sister circuits, however, have confronted the issue of mental incapacity due to an impairment and reached different conclusions. *Compare Spahr v. Secco*, 330 F.3d 1266, 1273 (10th Cir. 2003) (holding that a court must decide an Alzheimer's patient's "mental incapacity defense," even though it "naturally goes to both the entire contract and the specific agreement to arbitrate in the contract"), *with Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002) (holding that under *Prima Paint*, an arbitrator must decide a mental capacity defense because it is "a defense to [the] entire agreement . . . and not a specific challenge to the arbitration clause"). The Supreme Court later cited *Spahr* in a footnote but expressly declined to address whether courts or arbitrators should decide a mental incapacity defense. *Buckeye*, 546 U.S. at 444 n.1. Although these cases do not address the precise issue presented here, the Fifth Circuit's decision in *Primerica* supports the conclusion that plaintiffs' infancy defense relates to the *enforceability* or *validity* of the agreement as a whole, not specifically the delegation provision.

*Rent-A-Center*, plaintiffs have not explained how any of those provisions "causes the arbitration of [their] claim that the [Arbitration] Agreement is unenforceable to be unconscionable." 561 U.S. at 65, 74.

Likewise, plaintiffs' substantive unconscionability argument is also misplaced. They claim "the arbitration agreement—including the delegation clause—lacks the essential element of mutuality" because, under § 1 of the October 2018 Terms, StockX has the discretion to change the terms of service. But a "challenge to another provision of the contract . . . does not prevent a court from enforcing a specific agreement to arbitrate" or the delegation provision for that matter. *Rent-A-Center*, 561 U.S. at 70. Plaintiffs have again failed to explain how the change-in-terms provision operates on the delegation provision any differently than it operates on other provisions of the October 2018 Terms.

\*     \*     \*

Because a contract exists and the delegation provision itself is valid, we have "no business weighing the merits" of any challenge to the arbitration agreement or the October 2018 Terms. *See Henry Schein*, 139 S. Ct. at 529; *Granite Rock*, 561 U.S. at 299. It bears emphasis, however, that today's decision is narrow. As this court has said before: "It's not about the *merits* of the case. It's not even about *whether* the parties have to arbitrate the merits. Instead, it's about *who should decide* whether the parties have to arbitrate the merits." *Blanton*, 962 F.3d at 852 (emphasis in original).

The judgment of the district court is AFFIRMED.

————————————

## DISSENT

————————————

KAREN NELSON MOORE, Circuit Judge, dissenting.  This case concerns two issues: whether minors can be compelled to arbitrate under a contract's delegation provision when they have disaffirmed that contract, and whether parties that challenge a delegation clause as unconscionable are nonetheless bound by it.  Because I believe that delegation clauses should not bind individuals in these circumstances, I respectfully dissent.

## I.  PLAINTIFFS' INFANCY CHALLENGE

Plaintiffs argue that the infancy doctrine means they cannot be bound by a contract's delegation provision when they have disaffirmed the contract.  I agree.

When an arbitration agreement contains a delegation provision, the court—not an arbitrator—decides two types of challenges.  First, a court decides challenges that are "directed specifically to the [delegation provision]."  *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010).  Second, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide."  *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 296 (2010); *see Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.").

Although challenges that go to a contract's formation or existence are decided by courts, and challenges that go to a contract's validity are decided by arbitrators, no binding caselaw has addressed who decides capacity-based challenges.  *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) ("Our opinion today addresses only [the issue of the contract's validity] and does not speak to the issue decided in the cases cited by respondents (and by the Florida Supreme Court), which hold that it is for courts to decide . . . whether the signor lacked the mental capacity to assent.").  The Supreme Court's footnote in *Buckeye* suggests that claims that a signatory lacked the mental capacity to contract should not automatically be treated in the same way as challenges to a contract's validity.  Different circuits have resolved this issue

differently.  *Compare Spahr v. Secco*, 330 F.3d 1266, 1273 (10th Cir. 2003) (court, not arbitrator, decides challenge based on mental capacity) *with Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 472 (5th Cir. 2002) (mental-capacity issue should be decided by arbitrator, not the court).  In an unpublished decision, this court has treated a mental-capacity challenge as a challenge based on a contract's formation and, thus, one that should be decided by a court. *Rowan v. Brookdale Senior Living Cmtys., Inc.*, 647 F. App'x 607, 609–10 (6th Cir. 2016); *see also Moran v. Svete*, 366 F. App'x 624, 632 (6th Cir. 2010).

When determining who should decide a contract's arbitrability, the distinction between void and voidable contracts is "irrelevant."  *Buckeye*, 546 U.S. at 446.  The majority acknowledges this, but then concludes that "plaintiffs' infancy defense is a matter of enforceability," based on its recitation of Michigan caselaw that classifies minors' contracts as "voidable."  Maj. Op. at 12.  However, given the "irrelevan[ce]" of the void/voidable distinction in determining who should decide a claim's arbitrability, *Buckeye*, 546 U.S. at 446, Michigan's treatment of minors' contracts as voidable cannot resolve this question.

I would hold that a minor who has disaffirmed a contract is not subject to the contract's delegation provision.

First, to hold that an arbitration or delegation provision can bind a minor "would be to elevate it over other forms of contract."  *Rent-A-Center*, 561 U.S. at 71 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).  "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."  *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986) ("[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."); *Granite Rock*, 561 U.S. at 303 ("We have applied the presumption favoring arbitration . . . only where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended . . . .").

Although minors' contracts may be "valid until disaffirmed," *Semmens v. Floyd Rice Ford, Inc.*, 136 N.W.2d 704, 706 (Mich. Ct. App. 1965), they are not binding on the minors because minors may disaffirm them, *see id.* at 707, and parties may not enforce contracts against a minor until after the minor reaches the age of majority, *Woodman ex rel. Woodman v. Kera LLC*, 785 N.W.2d 1, 5 (Mich. 2010). Thus, even a valid contract with a minor is different in kind from a valid contract with an adult who has full capacity to contract. This distinction is more fundamental than the validity or enforceability of a specific provision and goes, instead, to the very "making" of the agreement. *Prima Paint*, 388 U.S. at 404.

Moreover, I find the Tenth Circuit's reasoning in *Spahr v. Secco*, 330 F.3d 1266, persuasive. In the context of a mental-capacity challenge, the Tenth Circuit explained:

> *Prima Paint* submits to arbitrators the resolution of a claim of fraud in the inducement of the entire contract, as contrasted with a claim of fraud in the inducement of the arbitration agreement itself. . . . Courts may apply this rule with ease when a party challenges a contract on the basis that it was induced by fraud because it is conceivable either that (1) he or she was fraudulently induced to agree to a contract containing an arbitration agreement; or (2) he or she was fraudulently induced to agree to the arbitration provision in particular. We cannot say the same when a party raises a mental capacity challenge, as it would be odd indeed if a party claimed that its mental incapacity specifically affected the agreement to arbitrate. We conclude, therefore, that the analytical formula developed in *Prima Paint* cannot be applied with precision when a party contends that an entire contract containing an arbitration provision is unenforceable because he or she lacked the mental capacity to enter into the contract. Unlike a claim of fraud in the inducement, which can be directed at individual provisions in a contract, a mental capacity challenge can logically be directed only at the entire contract.

*Spahr*, 330 F.3d at 1272–73 (internal citations omitted).

This same logic applies to challenges based on infancy. It would be "odd indeed" to say that infancy specifically affected an individual contractual provision. *Id.* at 1273. Because a challenge based on infancy can be directed at *only* the entire contract, and not at specific contractual provisions, it does not make sense to hold that a court may decide an infancy-based challenge solely when a party directs it at a specific provision.

## II.  PLAINTIFFS' UNCONSCIONABILITY CHALLENGE

I also take issue with the majority's assertions that plaintiffs' unconscionability arguments "do not relate specifically to the delegation provision."  Maj. Op. at 15.  This statement misconstrues both the plaintiffs' arguments and the severability principle.

"[U]nless [plaintiffs] challenged the delegation provision specifically, we must treat it as valid . . . , leaving any challenge to the validity of the [arbitration] [a]greement as a whole for the arbitrator."  *Rent-A-Center*, 561 U.S. at 72.  If a party "fail[s] to specifically challenge [the] delegation clause," an arbitrator must decide the issue of arbitrability.  *Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021).  If, however, a party challenges the validity of the delegation provision specifically, "the federal court *must* consider the challenge before ordering compliance with that agreement . . . ."  *Rent-A-Center*, 561 U.S. at 71 (emphasis added).

Although "merely challenging the entire agreement will not suffice," "[a] party may attack a delegation clause using the same arguments it raises against the entire arbitration agreement."  *Swiger*, 989 F.3d at 506; *see Rent-A-Center*, 561 U.S. at 74 ("It may be that had Jackson challenged the delegation provision by arguing that these common procedures *as applied* to the delegation provision rendered *that provision* unconscionable, the challenge should have been considered by the court."); *see also Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286, 291 (4th Cir. 2020) (a claim that a "delegation clause suffers from the same defect as the arbitration provision" is a specific challenge to the delegation provision); *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019) (an allegation that "'[t]he delegation provision . . . is *also* fraudulent' . . . is sufficient to make the issue of arbitrability one for a federal court" (emphasis added)); *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226–27 (3d Cir. 2018) ("In specifically challenging a delegation clause, a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions."); *Phillips v. Bestway Rental, Inc.*, 542 F. App'x 410, 411 (5th Cir. 2013) (per curiam) (when party used the same arguments to challenge the delegation provision and the arbitration agreement as a whole, the court considered these arguments "only to the extent that they challenge the delegation clause"); *Brice v. Haynes Invs., LLC*, 13 F.4th 823, 840 (9th Cir. 2021) (Fletcher, J., dissenting)

("A delegation provision may be held invalid for the same reason or reasons as the arbitration agreement.").

Plaintiffs challenged the delegation clause specifically. *See* R. 35 (Resp. to Mot. to Dismiss at 12–13) (Page ID #1330–31) ("The 2018 version allowed only 'new users' to opt out, even though the new terms were substantively different and contained a new clause delegating arbitrability to the arbitrator."); *id.* at 13–14 (Page ID #1331–32) ("Since the delegation clause gave the plaintiffs 'no other recourse but to submit to arbitration even when it is unclear if the arbitration board has authority to hear such disputes,' such an agreement shocks the conscience and is substantively unconscionable." (internal citations omitted)); *id.* at 14 (Page ID #1332) ("[T]he arbitration agreement—including the delegation clause—lacks mutuality."). Although some of these arguments (such as the argument that StockX added the delegation clause without allowing old users to opt out) apply *only* to the delegation clause and not the contract as a whole, other arguments (such as the argument that the delegation clause lacks mutuality) apply *both* to the delegation provision and the contract as a whole.[1] Both categories of arguments are properly decided by the district court, not an arbitrator.

This case thus contrasts with cases in which plaintiffs did not address the delegation provision at all. *See, e.g.*, *Rent-A-Center*, 561 U.S. at 72 ("Nowhere in his opposition to Rent-A-Center's motion to compel arbitration did he even mention the delegation provision."); *Swiger*, 989 F.3d at 506 (court cannot decide arbitrability because plaintiff "has not once mentioned, let alone challenged, the delegation clause"); *Anderson v. Charter Commc'ns, Inc.*, 860 F. App'x 374, 378 (6th Cir. 2021) (arbitrability to be decided by arbitrator because plaintiff "raised his arguments . . . to challenge the arbitration agreement generally, not the delegation provisions specifically"); *Danley v. Encore Cap. Grp.*, 680 F. App'x 394, 399 (6th Cir. 2017) (plaintiffs

---

[1]Relying on *Rent-A-Center*, the majority asserts that "a party's mere statement that it is challenging the delegation provision is not enough." Maj. Op. at 15. However, this claim is unsupported by *Rent-A-Center*, in which plaintiffs did not "even mention" the delegation provision. *Rent-A-Center*, 561 U.S. at 72. Regardless, plaintiffs' statements here go beyond "mere statement[s]" that they are challenging the delegation provision because they specifically point to aspects of the delegation clause, such as the way that it was added or the way that it uniquely forces parties into arbitration. Even if the majority thinks that these challenges may ultimately be unsuccessful, they specifically go to the delegation provision and, as a result, should be decided by a court, not an arbitrator.

"did not acknowledge their delegation provisions, let alone challenge them (below, or on appeal)").

Past cases made it clear that plaintiffs who wish to challenge, in court, an agreement's arbitrability must attack the delegation clause specifically. In this case, plaintiffs did so. I would therefore remand this case to the district court to decide the merits of plaintiffs' unconscionability argument.

For the reasons stated above, I respectfully dissent.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 21-1089

IN RE: STOCKX CUSTOMER DATA SECURITY
BREACH LITIGATION.
_____

I. C., a minor by and through his natural parent,
Nasim Chaudhri, M. S., a minor by and through his
natural parent, Shuli Shakarchi, ADAM FOOTE,
ANTHONY GIAMPETRO, KWADWO KISSI,
RICHARD HARRINGTON, JOHNNY SACASAS,
and CHAD BOLLING, individually and on behalf of
a Class of similarly situated persons,

      Plaintiffs - Appellants,

      v.

STOCKX, LLC; STOCKX, INC.,

      Defendants - Appellees.

**FILED**
Dec 02, 2021
DEBORAH S. HUNT, Clerk

Before:  GUY, MOORE, and GIBBONS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs
without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is
AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____
Deborah S. Hunt, Clerk